1  ALAN L. SCHLOSSER (#49957)
   MICHAEL T. RISHER (#191627)
2  LINDA LYE (#215584)
   ACLU Foundation of Northern California,
3  39 Drumm Street
   San Francisco, CA 94111
4  (415) 621-2493; (415) 255-1478
   aschlosser@aclunc.org, mrisher@aclunc.org,
5  llye@aclunc.org

6  Attorneys for Plaintiffs Kerie Campbell,
   Marcus Kryshka, and ACLU-NC
7

8  NATIONAL LAWYERS GUILD

9  RACHEL LEDERMAN, (#130192)
   Rachel Lederman & Alexsis C. Beach,
10 Attorneys at Law
   558 Capp Street
11 San Francisco, CA 94110
   (415) 282-9300; fax (415) 285-5066
12 rlederman@2momslaw.com

13 Attorneys for Plaintiffs Timothy Scott Campbell,
   Marc McKinnie, and Michael Siegel
14

15 (*List of Additional Attorneys on Next Page*)

16                        UNITED STATES DISTRICT COURT
17              FOR THE NORTHERN DISTRICT OF CALIFORNIA
                  SAN FRANCISCO – OAKLAND DIVISION
18

19 TIMOTHY SCOTT CAMPBELL, KERIE        )  CIVIL ACTION No.
   CAMPBELL, MARCUS KRYSHKA, MARC       )
20 MCKINNIE, MICHAEL SIEGEL, AMERICAN   )  **COMPLAINT FOR DAMAGES &**
   CIVIL LIBERTIES UNION OF NORTHERN    )  **INJUNCTIVE AND**
21 CALIFORNIA,                          )  **DECLARATORY RELIEF**
22                                       )
                  Plaintiffs,            )  **DEMAND FOR JURY TRIAL**
23                                       )
   v.                                    )
24                                       )
   CITY OF OAKLAND, INTERIM CHIEF OF    )
25 POLICE HOWARD JORDAN,                 )
                                         )
26                Defendants.            )

27

28

1    (*List of Additional Attorneys*)

2

3    CAROL SOBEL, (# 84483)
   429 Santa Monica Blvd #550
   Santa Monica, CA 90401-3439

4    (310) 393-3055; fax 310 451-3858
   carolsobel@aol.com

5

6    BOBBIE STEIN (#113239)
   503 Dolores Street, #201

7    San Francisco, CA 94110-1564
   (415) 255-0301; fax (510) 601-5780

8    bstein8692@aol.com

9    R. MICHAEL FLYNN (#258732)
   Flynn Law Office

10    170 Columbus Street, Ste 300

11    San Francisco, CA 94133
   (415) 989-8000 x 24; fax (415) 989-8028

12    rmflynnlaw@gmail.com

13    Attorneys for Plaintiffs Timothy Scott Campbell,

14    Marc McKinnie, and Michael Siegel

15

16    JAMES B. CHANIN (# 76043)
   JULIE M. HOUK (# 114968)

17    Law Offices of James B. Chanin
   3050 Shattuck Avenue

18    Berkeley, California 94705
   (510) 848-4752; FAX: (510) 848-5819

19    jbcofc@aol.com

20    Of Counsel to Plaintiff

21

22

23

24

25

26

27

28

1  Plaintiffs, for their Complaint in this action, allege and aver as follows:

2  **INTRODUCTION**

3  1.  Plaintiffs have peacefully demonstrated during protests associated with the "Occupy
4      Oakland" movement and they hope to continue to exercise their First Amendment rights
5      by continuing to demonstrate in Oakland. But Plaintiffs are concerned for their safety at
6      future protests, because during two previous protests they have encountered, and some of
7      them have been victims of, excessive force by Oakland Police Department personnel and
8      other law-enforcement officers working in concert with the Oakland Police Department.
9      This force includes the indiscriminate use of explosive devices, lead-shot-filled projectiles
10     fired from shotguns, nightsticks, and rubber-encased bullets. At least two demonstrators
11     have suffered extremely serious injuries during these demonstrations: one a fractured
12     skull, the other a ruptured spleen. These police actions were in direct violation of the
13     crowd-control policy that Oakland adopted as part of the settlement in two previous
14     consolidated cases before this Court, *Local 10, International Longshore and Warehouse*
15     *Union v. City of Oakland*, No.C03-2961 TEH (hereinafter *Local 10.* ) and *Coles v. City of*
16     *Oakland,* No. C03-2961 (TEH) (hereinafter *Coles)*. This policy remains in effect and the
17     *Local 10* settlement obliges Oakland to follow it.

18  2.  As a result of this violence, Plaintiffs fear that if they engage in peaceful expressive activity
19     during future demonstrations they will be seriously injured, in violation of their First
20     Amendment rights to assemble and protest and their Fourth and Fourteenth Amendment
21     rights to be free from excessive force. They are therefore asking this Court for a
22     temporary restraining order and further injunctive relief to prohibit Defendants and all
23     persons acting under their direction or in concert with them, as specified in Federal Rule
24     of Civil Procedure 65(d)(2), from violating these constitutional rights during future
25     protests. Specifically, plaintiffs are requesting that the Oakland Police Department and its
26     agents be enjoined from violating the Crowd Control Policy ("the Policy") that it adopted
27     as part of the settlement in *Local 10* and *Coles.*

28

-2-                                   COMPLAINT FOR DAMAGES &
Case No.                              DECLARATORY & INJUNCTIVE RELIEF

1

2                                    **JURISDICTION AND VENUE**

3    3.    This action arises under 42 U.S.C. § 1983 and the United States Constitution. This Court

4          has subject-matter jurisdiction over these claims under 28 U.S.C. §§ 1331 and 1343. It

5          has supplemental jurisdiction over state-law claims, including the claim that Oakland is

6          violating the *Local 10* settlement, under 28 U.S.C. § 1367.

7    4.    The Defendants are all public officials or other employees or agents of the City of Oakland,

8          as well as the City itself. Each of the Defendants resides within this District and/or

9          performs official duties within the State of California. This Court, accordingly, has

10         personal jurisdiction over each of the Defendants.

11   5.    Venue properly lies within this District under 28 U.S.C. § 1391(b). The named Defendants

12         perform their official duties in this District, and a substantial part of the events or

13         omissions giving rise to Plaintiffs' claims have occurred or will occur in this District.

14                                  **INTRADISTRICT ASSIGNMENT**

15   6.    Pursuant to Local Rule 3-2, this action may properly be assigned to the San Francisco or

16         Oakland divisions of this Court.

17                                         **THE PARTIES**

18                                          **Plaintiffs**

19   7.    Plaintiff Timothy Scott Campbell is a resident of Oakland and a strong supporter of the

20         Occupy movement. Mr. Campbell was filming police officers at the November 2, 2011

21         protest when he was shot in the leg by law enforcement with a lead-filled shot bag. Plaintiff

22         Marcus Kryshka is a National Lawyer's Guild Legal Observer who has participated as such

23         in repeated Occupy Oakland assemblies and demonstrations beginning on October 21, 2011

24         and continuing to the present day. Although he has years of experience as a legal observer,

25         he now worries about his personal safety and fears being physically harmed at a future

26         Occupy Oakland event because he has seen how the Oakland Police Department heads up

27         enforcement actions against Occupy Oakland and how protesters are treated by law

28         enforcement. His experiences with this cause him significant mental stress –including loss

                                    -3-        COMPLAINT FOR DAMAGES &
                                               DECLARATORY & INJUNCTIVE RELIEF

1    of sleep, digestive problems, and an overall sense of anxiety --when thinking about
2    upcoming protests. It is only because of his strong commitment to legal observing that he
3    continues to observe at the Occupy demonstrations and will continue to do so.

4  8. Plaintiff Marc McKinnie is a resident of Oakland and a supporter of Occupy Oakland. He
5    has participated in repeated Occupy Oakland assemblies and demonstrations beginning on
6    October 15, 2011 through the present. He very much believes in the message expressed by
7    the Occupy movement and participates in Occupy Oakland activities in order to express this
8    message. On October 25, he was shot with some sort of less-lethal munition by law
9    enforcement while he was alone, on his bicycle, when he stopped to pick up some debris
10   near a demonstration. The force of the shot knocked him to the ground.

11 9. Plaintiff Michael Siegel is a resident of Oakland and a supporter of Occupy Oakland. He
12   participated in demonstrations on October 25 and was injured when a projectile hit his
13   ankle; he also had a flash-bang grenade detonate so close to his head that it caused a ringing
14   in his ears and affected his hearing. He saw many instances of law-enforcement using
15   batons and projectile weapons in an arbitrary and unpredictable manner, and injuring
16   demonstrators. As a result, he is reluctant to participate in future Occupy events because of
17   fears for his personal safety.

18 10. Plaintiff Kerie Campbell is a resident of Oakland and an active participant in Occupy
19   Oakland. She wants to continue participating in demonstrations and other activities and
20   would like to include her children but fears for their safety because of the past police
21   violence.

22 11. Plaintiff American Civil Liberties Union of Northern California ("ACLU-NC") is a
23   nonprofit public interest organization with a longstanding goal of advancing free-speech and
24   other constitutional rights. The ACLU-NC, which has approximately 50,000 members, has
25   local chapters based on geography, one of which is the Paul Robeson Chapter, which covers
26   Oakland and other areas of Alameda County, California. Numerous members of the
27   ACLU-NC are interested in the Occupy movement in Oakland and other cities in Northern

-4-    COMPLAINT FOR DAMAGES &
DECLARATORY & INJUNCTIVE RELIEF

1    California and are participating in demonstrations and other expressive activity relating to
2    the movement.

3    12.  Plaintiffs, including members of the ACLU-NC, want to continue to exercise their rights to
4         assemble and speak along with persons associated with Occupy Oakland, but they fear that
5         if they do so they will be shot or otherwise injured by Defendants and their agents or will be
6         arrested without probable cause to believe that they have violated any law.

7                                              **Defendants**

8    13.  Defendant City of Oakland ("the City") is a municipal corporation, duly organized and
9         existing under the laws of the State of California.

10   14.  Defendant Howard A. Jordan is the Interim Chief of Police for the City of Oakland.

11   15.  Defendants Does 1-100 are employees or agents of the City and the Oakland Police
12        Department.

13                                **THE MATTERS IN CONTROVERSY**

14   16.  The last two months have seen demonstrations throughout this nation, demonstrations that
15        began with "Occupy Wall Street" and have since grown to include Occupy protests in
16        many cities in the United States and in California. Although its members have a range of
17        political views and opinions, the movement as a whole advocates for broad political and
18        social change in this nation, and many within the movement seek specifically to bring
19        attention to this nation's economic inequities.

20   17.  The Occupy Oakland movement began in early October; its activities have centered in the
21        plaza in front of Oakland City hall ("the plaza"). Persons associated with the movement
22        have engaged, and continue to engage, in a variety of expressive and associative activities
23        in and around the plaza, including demonstrations and marches, the exhibition of signs and
24        banners, and conducting meetings large and small about the movement and political and
25        social issues. Some supporters of the movement have erected tents in the plaza; many
26        others come to the plaza at various times to engage in meetings, demonstrations, and other
27        expressive activity.

28

                                                  -5-              COMPLAINT FOR DAMAGES &
                                                                   DECLARATORY & INJUNCTIVE RELIEF

1    18.    In the pre-dawn hours October 25, 2011, Oakland Police Department personnel and other
2           City workers, assisted by personnel from other law-enforcement agencies, forcibly
3           removed the demonstrators from the plaza, arresting a number of people and seizing signs
4           and other personal property. The officers used flash bang grenades and tear gas in this
5           operation. Many occupiers did not hear a dispersal order and thus did not have an
6           opportunity to gather their belonging and leave the camp without being arrested or harmed.
7           Many were beaten and shot with rubber bullets that morning even as some were trying to
8           leave the area with their belongings.

9    19.    OPD also destroyed tents and other personal property in this raid; for example, it slashed
10          the sides of the large yellow tent that had served as the heart of the plaza's children's
11          village, a space that had been created so that parents have a safe place to be with their
12          children. Officers threw the toys, books, and art supplies that people had brought to the
13          children's village into a different part of the plaza as if they were garbage.

14   20.    This raid sparked a number of protests throughout that same day by a much larger number
15          of people who were associated with Occupy Oakland or who wanted to show their support
16          for the movement.

17   21.    During a large, peaceful march that afternoon, OPD and its agents used batons to beat one
18          protester who had fallen to the ground and against others who were trapped in a dense
19          crowd and unable to disperse or move because of the press of the crowd. Also during this
20          march, OPD fired so-called beanbags (which are actually bags filled with lead shot that are
21          fired from a shotgun) into a group of people that were doing nothing more than failing to
22          move as quickly as the rest of the crowd in response to a police order. Instead of throwing
23          flash-bang grenades and tear gas canisters at a safe distance away from the crowd, officers
24          instead threw them directly *at* the crowd, and without any audible warnings of imminent
25          use.

26   22.    As the demonstrations continued into the evening, OPD and its agents repeatedly ordered
27          the assembled crowd to disperse, even though no illegal conduct had occurred and the
28          protesters had merely assembled in peaceful protest. In other instances, OPD and its agents

-6-                                    COMPLAINT FOR DAMAGES &
                                      DECLARATORY & INJUNCTIVE RELIEF

1    deployed dispersal tactics before any audible dispersal announcement. After deciding to

2    disperse crowds, officers resorted immediately to tear gas, flash bang grenades, and

3    projectiles, rather than first attempting less-forceful crowd dispersal methods.

4    23.    OPD and its agents fired projectiles indiscriminately at dense crowds of peaceful protesters

5    without warning. In one instance, the officers launched a barrage of projectiles that

6    blanketed the assembled group in teargas, and subjected the assembled group to flash-bang

7    grenades and other projectiles, simply because someone in the crowd had thrown a single

8    plastic water bottle. Worse, even people 100 feet away from the source of the bottle who

9    were chanting at others not to throw things at the police were barraged.

10    24.    One such volley of projectiles fractured the skull of United States Marine Corps veteran

11    Scott Olsen, causing him to fall to the ground and putting him in the hospital for three

12    weeks. Making things worse, when protesters rushed to assist him, the police tossed gas

13    canisters and flash-bang grenades at this small group of Good Samaritans and towards a

14    wheelchair-bound person who was attempting to leave the area. Mr. Olsen was dripping

15    with blood from being struck by the projectile.

16    25.    OPD and its agents also targeted projectiles such as pepperballs at specific individuals who

17    posed no risk to the officers or to anybody else. One protester, who was hit repeatedly in

18    the back by painful projectiles from the plastic-bottle-prompted assault, walked past the

19    police line to escape the shooting. When he asked the police why they were shooting at

20    him, he was shot again. He was hit at least 8 times with bean bags, rubber bullets, or

21    pepperballs, causing pain, swelling, bruising, and bleeding.

22    26.    In response to these widely reported examples of excessive force, civil rights organizations

23    including the ACLU and the National Lawyers Guild (counsel for Plaintiffs in this suit)

24    criticized OPD's enforcement action, citing concerns about systematic and blatant

25    violations of OPD's Crowd Control Policy, which was adopted pursuant the court-

26    approved settlement in *Local 10*, on which counsel in this suit were also counsel. The

27    Department sent a letter in response indicating that it would treat the letter as a complaint.

28

                                        -7-         COMPLAINT FOR DAMAGES &
                                                    DECLARATORY & INJUNCTIVE RELIEF

27. Outraged by OPD's conduct on October 25, Occupy Oakland called for a general strike on November 2. The day was a peaceful mix of protest and festivities, with thousands of people walking around, conversing, and marching to different destinations. Dancers participated in a flash mob and thousands marched to shut down the Port of Oakland. All these events were peaceful and involved no police confrontation. Indeed, there were few police even visible.

28. Later that evening and the early hours of November 3, however, in downtown Oakland, OPD again invited other law enforcement agencies to participate in its enforcement actions and repeated the same, grave mistakes it made on October 25.

29. For example, although the Policy requires that dispersal orders be reasonably audible, on November 2-3 those orders that were given were often unintelligible and failed to provide protesters with directions as to how to comply. In other instances, OPD and its agents trapped protesters, who went precisely where instructed, in an area with explosions and tear gas canisters flying, only to then arrest them, even though the Policy requires that dispersal orders must specify adequate egress or escape routes.

30. OPD and its agents again fired all manner of projectiles indiscriminately into crowds where protesters were simply standing in the street, although the Policy flatly states that less-lethal munitions "may never be used indiscriminately against a crowd or group of persons, even if some members of the crowd or group are violent or disruptive."

31. Individuals were also targeted for shooting. For example, citizen journalist and videographer Plaintiff Scott Campbell started filming a police line; when he was told to step back he complied and stepped back 5 to 10 feet, asking "Is this Okay?" When he received no response, he continued filming the police line while maintaining the same distance and was moving further away when he was suddenly shot in his right leg with what is euphemistically called a "bean bag," actually a lead-shot-filled projectile fired from a shotgun. The video taken by Mr. Campbell and depicting this incident is at http://www.ibabuzz.com/politics/2011/11/07/video-police-fell-occupy-oakland-videographer/.

COMPLAINT FOR DAMAGES &
DECLARATORY & INJUNCTIVE RELIEF

32. The incident was not isolated. Another man who was simply standing there, not posing any apparent threat and not engaged in any violence, was shot three times with bean bags or some other projectile. A few minutes later he was seen clutching an area on his shirt where a large patch of blood had developed.

33. As they had done on October 25, OPD threw flash bang grenades directly at bystanders, who were then showered with shrapnel, even though the Policy requires that such devices be exploded at a safe distance from the crowd. Audible warnings were not given prior to the use of flash bangs. Police fired tear gas canisters into the midst of the crowd, without intelligible warnings, and without first attempting less forceful dispersal tactics. The wanton use of these injury-inflicting weapons on peaceful protesters caused panic, chaos, and fear.

34. Other incidents of police brutality included four large police officers knocking a young woman slowly riding her bicycle to the ground. Several officers chased after a man dressed as a comic-book hero and then, when they caught him, beat him with their batons.

35. Many of these actions that OPD and its agents took on October 25 and November 2-3 violate Oakland's crowd control policy, a policy that was drafted following another case involving OPD's use of excessive force, including tear gas, grenades, and less-lethal projectiles at the Port of Oakland in 2003. The policy was approved by then-OPD-Chief Richard Word on November 9, 2004, and was created to comply with federal and state laws. *See Local 10*, Stipulation and Order Approving Partial Settlement, at 4. This Court retained jurisdiction to resolve any dispute between the parties concerning the settlement for a period of three years. Although that jurisdiction grant has expired, the Crowd Control Policy that was adopted as part of the policy remains in full force and effect.

36. For example, the actions described above violated the following provisions of the Policy:

37. The overarching principle of the Policy is "to use minimal reliance on the use of physical force and authority needed to address a crowd management or crowd control issue." Policy § I. "Direct Fire SIM [Specialty Fire Less-Lethal Munitions] may never be used indiscriminately against a crowd or group of persons, even if some members of the crowd

COMPLAINT FOR DAMAGES & DECLARATORY & INJUNCTIVE RELIEF

1    or group are violent and disruptive." *Id.* § V-F-4. "When circumstances permit the

2    supervisor on the scene shall make an attempt to accomplish the policing goal without the

3    use of Specialty Impact Munitions as described above, and, if practical, an audible warning

4    shall be given to the subject before deployment of the weapon." *Id.* § V-F-10.

5  38.  The Policy identifies a range of crowd control tactics that minimize the risk of injury (such

6    as display of police officers, encirclement and arrest). *See Id.* § VI-A through VI-N.

7    Because "chemical agents can produce fatalities, serious injuries or even death," they

8    cannot be used unless other less dangerous methods have first been exhausted. *Id.* §§ VI-

9    M-5, V-G-6. This determination to escalate to chemical agents must be made by OPD's

10    Incident Commander. VI-M-2. Even then, tear gas may only be used (1) after an audible

11    warning, giving the crowd a reasonable time to disperse (*id.* §§ VI-M-5), (2) "in the form

12    of a delivery system, which emits the chemical agent diffusely without targeting a specific

13    individual or individuals." (*id.* §VI-M-1), (3) in "the minimum amount" necessary (*id.*

14    § VI-M-3), (4) under strict command supervision (*id.* §§ VI-m-2, VI-m-5) and (5) if OPD

15    has previously arranged for sufficient medical personnel to treat to injuries (*id.* § VI-M-6).

16  39.  The Policy also prohibits OPD from firing "sound and light diversionary/distraction

17    devices" directly into crowds; instead they must "be deployed to explode at a safe from the

18    crowd to minimize the risk of personal injury." *Id.* § VI-N-2. As with tear gas, OPD must

19    provide audible warnings and a reasonable opportunity to disperse before such weapons are

20    used (*id.* §VI-N-3) because they present a "risk of permanent loss of hearing or serious

21    bodily injury from shrapnel." (*id.*VI-N-2).

22  40.  The Policy prohibits the use of Specialty Impact Less-Lethal Munitions, such as "bean

23    bags" and other projectiles, for crowd management, crowd control or crowd dispersal

24    during demonstrations or crowd events *Id.* §§ V-F-1-b, V-F-2. These munitions "may

25    never be used indiscriminately against a crowd or group of persons, even if some members

26    of the crowd or groups are violent or disruptive." V-F-4. Instead, they may only be used

27    against a specific individual who poses an immediate safety threat and "when the

28

1    individual can be targeted without endangering other crowd members or bystanders." *Id.* §
2    V-F-3.

3    41.   Batons should not be used "for crowd control, crowd containment or crowd dispersal....
4          When reasonably necessary for protection of the officers or to disperse individuals in the
5          crowd pursuant to the procedures of this policy, batons may be used in a pushing or
6          jabbing motion. Baton jabs should not be used indiscriminately against a crowd or group of
7          person, but only against individuals who are physically aggressive or actively resisting
8          arrest." *Id.* § VI-L-2, VI-L-3.

9    42.   The actions described above violated not only OPD's own Policy but also federal and state
10         constitutional prohibitions against unreasonable seizure and excessive force. These actions
11         also violated the free-speech rights of the protestors by interfering with their ability to
12         engage in expressive activity in and around the plaza.

13   43.   On information and belief, many of these violations were caused by Oakland's failure to
14         adequately inform the 17 outside law-enforcement agencies that were assisting it of the
15         details of the Crowd Control Policy and Oakland's failure to supervise or control those
16         agencies to ensure that they complied with Oakland's Crowd Control Policy. Many of
17         these agencies did not comply with Oakland's policy.

18   44.   These outside law-enforcement agencies were operating in Oakland pursuant to a mutual-
19         aid plan and the consent of the Oakland Police Department and Interim Chief Jordan,
20         which was necessary to confer full peace-officer authority upon law-enforcement personnel
21         from other jurisdictions. *See* Ca. Penal Code § 830.1(a)(2). Such mutual aid arrangements
22         are governed by the provisions of the California Government Code, §§ 8550 *et seq.* These
23         statutes expressly state that "the responsible local official in whose jurisdiction an incident
24         requiring mutual aid has occurred shall remain in charge at such incident, including the
25         direction of personnel and equipment provided him through mutual aid," unless the parties
26         agree otherwise. Ca. Gov't Code § 8618. On information and belief, Interim Chief Jordan
27         remained in charge of the operations on October 25 and November 2-3 pursuant to this

28

COMPLAINT FOR DAMAGES &
                                      DECLARATORY & INJUNCTIVE RELIEF

1    statute, and he allowed these outside agencies to violate OPD's Crowd Control Policy and

2    the constitutional rights of protestors, as described above.

3    45.  Plaintiffs are ignorant of the true names and/or capacities of defendants sued herein as

4         Does 1 through 100, inclusive, and therefore sues said defendants by such fictitious names.

5         Plaintiffs will amend this complaint to allege their true names and capacities when

6         ascertained. Plaintiffs are informed and believe, and upon such information and belief

7         allege that each of the Doe defendants is legally responsible and liable for the incident,

8         injuries and damages hereinafter set forth, and that each of said defendants proximately

9         caused said incidents, injuries and damages by reason of their negligence, breach of duty,

10        negligent supervision, management or control, battery, violation of constitutional rights,

11        violation of public policy, false arrests, or by reason of other personal, vicarious or imputed

12        negligence, fault, or breach of duty, whether severally or jointly, or whether based upon

13        agency, employment, ownership, entrustment, custody, care or control or upon any other

14        act or omission. Plaintiffs will ask leave to amend this complaint to insert further charging

15        allegations when such facts are ascertained.

16   46.  Each of the defendants caused, and is responsible for the above-described unlawful

17        conduct and resulting injuries by, among other things, personally participating in the

18        unlawful conduct or acting jointly or conspiring with others who did so; by authorizing,

19        acquiescing in or setting in motion policies, plans or actions that led to the unlawful

20        conduct; by failing to take action to prevent the unlawful conduct; by failing and refusing

21        with deliberate indifference to plaintiffs' rights to initiate and maintain adequate training

22        and supervision; and by ratifying the unlawful conduct that occurred by agents and officers

23        under their direction and control, including failing to take remedial or disciplinary action.

24   47.  In doing the acts alleged herein, defendants, and each of them, acted within the course and

25        scope of their employment for the City of Oakland and/or Does 1-100 and/or each of them.

26   48.  In doing the acts and/or omissions alleged herein, defendants, and each of them, acted

27        under color of authority and/or under color of law. In doing the acts and/or omissions

28

-12-                    COMPLAINT FOR DAMAGES &
                        DECLARATORY & INJUNCTIVE RELIEF

1    alleged herein, defendants, and each of them, acted as the agent, servant, employee and/or

2    in concert with each of said other defendants herein.

3                    **NEED FOR INJUNCTIVE AND DECLARATORY RELIEF**

4    49.   Plaintiffs reallege and incorporate here the allegations in Paragraphs 1-48, above, as though

5          fully set forth.

6    50.   Plaintiffs and other persons associated with Occupy Oakland fully intend to continue to

7          assemble and exercise their free-speech rights in downtown Oakland. They expect, and it

8          is likely, that the police will again take action against Occupy Oakland in the immediate

9          future; such operations have in fact occurred this morning. Plaintiffs will want to engage

10         in speech in response to these actions. Plaintiffs also reasonably expect that, in the

11         absence of an order from this Court, when they participate in demonstrations of any type

12         associated with Occupy they will face the same sort of police violence that occurred on

13         October 25 and November 2-3. This will result in irreparable harm to them, because a

14         future award of damages cannot remedy the loss of constitutional rights or the physical

15         and emotional harm they will suffer in the absence of an injunction. Both the public

16         interest and equity favor granting an injunction to allow plaintiffs to exercise their

17         constitutional rights without suffering excessive force at the hands of the police.

18   51.   There exists an actual, present and justiciable controversy between Plaintiffs and

19         Defendants concerning their rights and duties with respect to Defendants' conduct

20         described herein. Plaintiffs contend that Defendants violated, and will violate, Plaintiffs'

21         rights under the constitutions and laws of the United States and California, specifically,

22         Plaintiffs' rights to freedom of speech and assembly and to be free from the use of

23         excessive force by the police. On information and belief, Defendants deny that their

24         conduct violated, or continues to violate, Plaintiffs' rights under the constitutions and laws

25         of the United States and California. Plaintiffs fear that they will again be subjected to

26         such unlawful and unconstitutional actions, and seek a judicial declaration that

27         Defendants' conduct deprived, and continues to deprive, Plaintiffs of their rights under the

28         constitution and laws of the United States and California.

                              -13-            COMPLAINT FOR DAMAGES &
                                              DECLARATORY & INJUNCTIVE RELIEF

1  52. This controversy is ripe for judicial decision, and declaratory relief is necessary and

2      appropriate so that the parties may know the legal obligations that govern their present

3      and future conduct.

4  **COUNT I: VIOLATION OF THE FOURTH AMENDMENT TO**

5  **THE UNITED STATES CONSTITUTION (42 U.S.C. § 1983)**

6  53. Plaintiffs hereby reallege and incorporate by reference the allegations contained in

7      Paragraphs 1-52 as though fully set forth herein.

8  54. The Fourth Amendment to the United States Constitution protects the right of people to be

9      free from unreasonable searches and seizures.

10 55. Defendants actions, and the actions of their agents and those acting in concert with them

11     violate these rights by inflicting grossly excessive force on Plaintiffs and putting them in

12     fear of being arrested without probable cause.

13

14 **COUNT II: VIOLATION OF THE FIRST AMENDMENT TO THE**

15 **UNITED STATESCONSTITUTION (42 U.S.C. § 1983)**

16 56. Plaintiffs hereby reallege and incorporate by reference the allegations contained in

17     Paragraphs 1-55 as though fully set forth herein.

18 57. The First Amendment protects the freedom of speech and also the right of the people

19     peaceably to assemble, and to petition the Government for a redress of grievances.

20 58. Defendants' actions, and the actions of their agents, violate these rights, because Plaintiffs

21     face an unreasonable risk of physical harm if they again try to exercise these rights in

22     conjunction with Occupy-related demonstrations.

23

24 **COUNT III: VIOLATION OF THE FOURTEENTH AMENDMENT TO THE**

25 **UNITED STATES CONSTITUTION (42 U.S.C. § 1983)**

26 59. Plaintiffs hereby reallege and incorporate by reference the allegations contained in

27     Paragraphs 1-58 as though fully set forth herein.

28

-14-        COMPLAINT FOR DAMAGES &
            DECLARATORY & INJUNCTIVE RELIEF

1  60. The Fourteenth Amendment prohibits the government from depriving any person of his or

2       her rights without due process of law. Defendants' actions, and the actions of their agents,

3       violate these rights, because they employed a level of force and violence that shocks the

4       conscience.

5      **COUNT III: VIOLATION OF ARTICLE I §§ 2, 3 OF THE**

6      **CALIFORNIA CONSTITUTION (CAL. CODE CIV. PRO. § 527)**

7  61. Plaintiffs hereby reallege and incorporate by reference the allegations contained in

8       Paragraphs 1-60 as though fully set forth herein.

9  62. Article I § 2(a) of the California Constitution guarantees that "Every person may freely

10      speak, write and publish his or her sentiments on all subjects, being responsible for the

11      abuse of this right. A law may not restrain or abridge liberty of speech or press."

12  63. Article I § 2(a) of the California Constitution guarantees that "The people have the right to

13      instruct their representatives, petition government for redress of grievances, and assemble

14      freely to consult for the common good."

15  64. Defendants' actions, and the actions of their agents and co-conspirators, violate these rights,

16      because Plaintiffs face an unreasonable risk of physical harm if they again try to exercise

17      these rights in conjunction with Occupy-related demonstrations.

18      **COUNT IV: VIOLATION OF ARTICLE I § 13 OF THE**

19      **CALIFORNIA CONSTITUTION (CAL. CODE CIV. PRO. § 527)**

20  65. Plaintiffs hereby reallege and incorporate by reference the allegations contained in

21      Paragraphs 1-64 as though fully set forth herein.

22  66. Article I § 13 of the California Constitution prohibits unreasonable searches and seizures.

23  67. Defendants actions, and the actions of their agents and co-conspirators, violate these rights

24      by inflicting grossly excessive force on Plaintiffs.

25      **COUNT V: VIOLATION OF THE BANE ACT**

26      **(CAL. CIV. CODE. § 52.1)**

27  68. Plaintiffs hereby reallege and incorporate by reference the allegations contained in

28      Paragraphs 1-67 as though fully set forth herein.

-15-   COMPLAINT FOR DAMAGES & DECLARATORY & INJUNCTIVE RELIEF

1    69.    The Bane Act states that "Any individual whose exercise or enjoyment of rights secured by

2           the Constitution or laws of the United States, or of rights secured by the Constitution or

3           laws of this state, has been interfered with, or attempted to be interfered with by [threats,

4           intimidation, or coercion], may institute and prosecute in his or her own name and on his or

5           her own behalf a civil action for damages, including, but not limited to, damages under

6           Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable

7           exercise or enjoyment of the right or rights secured." Ca. Civ. Code § 52.1(b),

8           incorporating Ca. Civ. Code § 52(a).

9    70.    Defendants have violated, and will continue to violate, Plaintiffs rights under the First

10          Fourth, and Fourteenth Amendments and under Article I §§ 2, 3, and 13 of the California

11          Constitution, through threats, intimidation, and coercion.

12                          **COUNT V: VIOLATION OF SETTLEMENT AGREEMENT/**

13                                         **BREACH OF CONTRACT**

14   71.    Plaintiffs hereby reallege and incorporate by reference the allegations contained in

15          Paragraphs 1-70 as though fully set forth herein.

16   72.    In settlement agreement resolving the *Local 10* and *Coles* cases, Defendant City of Oakland

17          agreed to adopt its current Crowd Control Policy and to follow that Policy.

18   73.    By their actions described herein, Defendants have violated that Policy and thus breached

19          the settlement agreement, to which Plaintiffs are third-party beneficiaries.

20                                         **RELIEF SOUGHT**

21   WHEREFORE, Plaintiffs seek the following relief:

22          A.     A temporary restraining order, preliminary and permanent injunction under

23                 Federal Rule of Civil Procedure 65:

24                 1.     prohibiting Defendants, including all of their officers, agents, servants,

25                        employees, attorneys, and other persons in active concert or participation with them,

26                        from violating Oakland's Crowd Control Policy;

27                 2.     prohibiting Defendants from requesting or authorizing assistance from outside

28                        law-enforcement agencies without ensuring that those agencies, and their personnel,

                                              -16-           COMPLAINT FOR DAMAGES &
                                                             DECLARATORY & INJUNCTIVE RELIEF

1    will abide by Oakland's Crowd Control Policy.

2    3.    prohibiting other actions that violate the constitutional rights of plaintiffs, as this

3          Court deems necessary to preserve Plaintiffs' constitutional rights under the First and

4          Fourth Amendments

5    B.    Declaratory Relief.

6    C.    Compensatory, statutory, and punitive Damages according to state and federal

7          law.

8    D.    Costs and attorneys fees incurred in this action pursuant to 42 U.S.C. §1988, Cal.

9          Civil Code 52.1, Cal. Code of Civil Procedure 1021.5, and other applicable authority.

10   E.    Such other and further relief as this Court deems just and proper.

11

12   DATED: November **14**, 2011

13                                          Attorney for plaintiffs

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES &
                                             DECLARATORY & INJUNCTIVE RELIEF