Barbara Parker, City Attorney, State Bar No. 69722
Randolph W. Hall, Chief Assist. City Attorney, State Bar No. 080142
Rocio V. Fierro, Senior Deputy City Attorney, State Bar No. 139565
OFFICE OF THE CITY ATTORNEY
CITY OF OAKLAND
One Frank H. Ogawa Plaza, Sixth Floor
Oakland, California 94612
Telephone:    510.238.3601
Facsimile:    510.238.6500

Gregory M. Fox, State Bar No. 070876
BERTRAND, FOX & ELLIOT
The Waterfront Building
2749 Hyde Street
San Francisco, California 94109
Telephone: (415) 353-0999
Facsimile:  (415) 353-0990

Attorneys for Defendants CITY OF OAKLAND
And INTERIM CHIEF OF POLICE HOWARD JORDAN,

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY SCOTT CAMPBELL, KERIE CAMPBELL, MARCUS KRYSHKA, MARC McKINNIE, MICHAEL SIEGEL, AMERICAN CIVIL LIBERTIES UNION OF NORTHERN CALIFORNIA,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF OAKLAND, INTERIM CHIEF OF POLICE HOWARD JORDAN,<br><br>Defendants. | Case No. CV11-05498 RS<br><br>**CITY OF OAKLAND'S OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION  FOR A TEMPORARY RESTRAINING ORDER** |

The successful, peaceful and lawful  facilitation by the Oakland Police Department ("OPD") under the direction of Chief of Police Howard Jordan of all First Amendment and related crowd management activities in the City of Oakland on Monday November 14, 2011 clearly demonstrate no Temporary Restraining Order is necessary.  Its undisputed that  on that day the Oakland Police Department cleared persons illegally camping in Frank Ozawa Plaza after repeated notices without

injury or use of force. Persons engaged in civil disobedience were arrested without incident or injury. During the day the police allowed and facilitated First Amendment activities by all concerned culminating in the evening with protesters being allowed to re-assemble in Frank Ogawa Plaza without incident, injury or use of force. Protesters are now planning their future free speech activities in the City of Oakland.

All of OPD's crowd management that day was done in strict conformity with the First and Fourth Amendments to the United States Constitution, applicable law and the Oakland Police Department Crowd Control Policy. And OPD's crowd management on Monday, November 14, 2011 was consistent with the ongoing reasonable and lawful OPD crowd management of people exercising their First Amendment rights since the Occupy Oakland protests began October 10, 2011.

The plaintiffs application for a TRO relies on isolated incidents of alleged excessive force that are unproven, out of context and generally pertain only to two limited actions occurring after dispersal orders were given to violent protesters who failed to timely disperse. The application ignores the fact thousands and thousands of peaceful, non-violent citizens and other persons have daily exercised their Constitutional rights in the City of Oakland since October 10, 2011and up until the present and are planning on future activities. The application should be denied with prejudice. Those individuals who complain of injuries are entitled to bring their claims for damages actions in the United States District Court where said allegations will be adjudicated in accordance with the Rule of Law and due process.

As the Supreme Court has held, "recognition of the need for a proper balance between state and federal authority counsels restraint in the issuance of injunctions against state officers engaged in the administration of the States' criminal laws in the absence of irreparable injury which is both great and immediate." (*City of Los Angeles v. Lyons*, 461 U.S. 95, 112 (1982).) Although "suits brought under 42 U.S.C. § 1983 are exempt from the flat ban against the issuance of <u>injunctions</u> directed at state-court proceedings . . . this holding did not displace the normal principles of equity, comity, and federalism that should inform the judgment of federal courts when asked to oversee state law enforcement authorities. In exercising their equitable powers federal courts must recognize 'the special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law.'" (*Id*.) "The

2
CITY OF OAKLAND'S OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION FOR A
TEMPORARY RESTRAINING ORDER

individual States may permit their courts to use injunctions to oversee the conduct of law enforcement authorities on a continuing basis.  **But this is not the role of a federal court**, absent [the requisite] justification" for such relief.  [Emphasis added.]  (*Id*. at 113.)

In *Hodgers-Durgin v. Gustavo De La Vina*, 199 F.3d 1037 (9th Cir. 1999), after plaintiffs were stopped by U.S. Border Patrol agents, they sought declaratory relief and an injunction requiring the Border Patrol to change its detention practices, which they alleged involved systemic violations of the Fourth Amendment.  The Ninth Circuit concluded plaintiffs were not entitled to equitable relief because they failed to establish the element of  "irreparable injury" as there was no showing of any real or immediate threat that the plaintiffs would be wronged again.  (*Id*. at 1042.)  "The equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiffs will be wronged again – a 'likelihood of substantial and immediate irreparable injury.'"  (*Id.*)

"The Supreme Court has repeatedly cautioned that, absent a threat of immediate and irreparable harm, the federal courts should not enjoin a state to conduct its business in a particular way." (*Id*.)  Of particular concern is the delicate balance between "federal equitable power and State administration of its own law" and whether the relief sought would disrupt the normal course of state court proceedings and require continuous supervision by the federal court for its enforcement.  "'A federal court should not intervene to establish the basis for future intervention that would be so intrusive and unworkable." (*Id*. at 1042.)    The Supreme Court has explained that "the principles of equity . . . militate heavily against the grant of an injunction except in the most extraordinary circumstances." (*Id*.)

Accordingly, the Ninth Circuit held that plaintiffs failed to demonstrate a sufficient likelihood of injury to warrant equitable relief.  Whether the plaintiffs were likely to be stopped again by the Border Patrol was "simply too speculative to warrant an equitable judicial remedy, including declaratory relief, that would require, or provide a basis for requiring, that the Border Patrol change its practices."  (*Id*. at 1044.)    Similar is the situation here where plaintiffs have engaged in speculation about future events involving the OPD and their possible First Amendment activities.  The facts, as demonstrated as recently as the undisputed events of  Monday November 14, 2011,  refute plaintiffs speculation and they have failed to meet their burden of proof.

## I.   THE PLAINTIFFS HAVE FAILED TO DEMONSTRATE IRREPERABLE INJURY

Plaintiffs must show that unless the relief is granted, they will suffer *immediate and irreparable injury*. Plaintiffs offer no evidence that they or any member of the crowd will meet this burden. Their offer of proof consists of isolated incidents and not reflective of how hundreds of officers have handled thousands of protesters over the past 35 days.  There is no showing any demonstrator appeared in the City of Oakland on Monday November 14 and was deterred or prevented from exercising his or her First Amendment Rights.  The news media has uniformly reported that OPD's crowd management on November 14 was excellent.  There is no showing any person is or will be prevented from engaging in protected and non-violent peaceful protest in the future.   In fact, just the opposite is true.  See Declaration of Chief of Police Howard Jordan supporting City's Opposition Points and Authorities (hereafter "Jordan Declaration.") at paragraphs 1 through 15.   OPD has acted in accordance with its Crowd Control Policy and will continue to so do.   See Jordan Declaration at paragraphs 5 and 6. The Police Department has acted to minimize physical contact between protesters and law enforcement personnel and there is no showing that there has been systemic application of unreasonable force by significant numbers of officers against significant groups of peaceful and non-violent demonstrators.

## II.   THERE IS AN ADEQUATE REMEDY AT LAW.

The plaintiffs complain they were injured during incidents on two separate occasions involving thousands of protesters and hundreds of police officers.  These incidents did not occur during the daily peaceful protests and General Strike well documented by the Media.  They apparently occurred at limited times during two days: October 25 and November 2.  These incidents were tense, violent and chaotic. Many if not most of these claims seem to have occurred only after an unlawful assembly was declared which obligates all persons to leave the area. Its undisputed people refused to leave the area and there were significant accounts of undisputed violence, assaults on the police officers, arson, and vandalism. Crowd control and dispersal actions following the declaration of an unlawful assembly is dangerous and difficult work. Chief Jordan has declared that the officers crowd management in general, and especially during dispersal of crowds following declarations of an unlawful assembly,  were consistent with the

1  Crowd Control policy and applicable law.  See Jordan Declaration at paragraphs  7 and 15.  For those
2  persons claiming injury during isolated incidents involving a single officer or very small group of
3  officers damages are available to those who can demonstrate they were injured by unlawful police action.
4  Allegations of misconduct by individual officers will be addressed internally by the OPD Internal Affairs
5  Division and externally by the District Court.

6        III.   PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS.

7  Its undisputed the OPD Crowd Control Policy is lawful and reasonable.  Chief Jordan has
8  declared that he has directed OPD follow its Crowd Control Policy and that all officers and supervisors
9  engaged in crowd control have been trained and directed  that all  crowd management operations must be
10 in strict accordance with the policy.  See Jordan Declaration at paragraphs 3, 5, 6 and 7.  Its undisputed
11 that since October 10 and through November 14, 2011  OPD has facilitated  the exercise of
12 Constitutional  rights by thousands of persons on a daily basis especially October 15 and November 2,
13 the day of the General Strike.  See Jordan Declaration at 15.   Given the record which is limited at
14 present but will be supplemented as necessary, it is highly unlikely that the plaintiffs will succeed on the
15 merits of their claims for injunctive relief.

16       IV.  THE BALANCE OF HARSHIPS SHOULD BE WEIGHED IN THE CITY'S FAVOR.

17 OPD must be able to investigate and discipline itself. The Crowd Control Policy is Constitutional.
18 It exceeds minimal constitutional standards. If individual personnel either singularly or in concert,
19 violated city policy, then the city must be able to investigate complaints of performance of duty. To
20 impose injunctive relief, particularly where it has not been demonstrated that the city has done no wrong,
21 would impose an unfair, unnecessary and onerous condition on the city.

22       V.  THE PUBLIC INTEREST IN PEACEFUL  PROTEST AND PROTECTION OF LIFE AND
23 PROPERTY HAS BEEN MAINTAINED BY THE OAKLAND POLICE DEPARMENT.

24 Granting the prayed for injunctive relief would have an adverse effect on the public interest
25 because it could chill the ability of the city  and its police department to act in the interest of all persons
26 living, protesting  and working in the City of Oakland.  There is no need for an Order requiring OPD to
27 comply with its Crowd Control Policy.  There is no proof of systemic violations of the policy.  The
28 record is clear that OPD has done a very difficult job facilitating First Amendment activities by

thousands of persons on a daily basis under stressful conditions over the past 30 days in a manner consistent with the Constitution and OPD's own Crowd Control Policy. Individual instances of alleged misconduct will be investigated internally and subject to adjudication in the civil courts. Defendant respectfully requests that the Court deny the plaintiffs application for a TRO.

Dated: November 15. 2011

By: _____/s/_____
Randolph W. Hall
Attorneys for Defendants
CITY OF OAKLAND and INTERIM CHIEF OF POLICE HOWARD JORDAN

Dated: November 15. 2011

By: _____/s/_____
Rocio V. Fierro
Attorneys for Defendants
CITY OF OAKLAND and INTERIM CHIEF OF POLICE HOWARD JORDAN

Dated: November 15. 2011                BERTRAND, FOX & ELLIOT

By: _____/s/_____
Gregory M. Fox
Attorneys for Defendants
CITY OF OAKLAND and INTERIM CHIEF OF POLICE HOWARD JORDAN